Francis J. "Casey" Flynn, Jr. #304712
casey@lawofficeflynn.com
**LAW OFFICES OF**
**FRANCIS J. FLYNN, JR.**
6057 Metropolitan Plz.
Los Angeles, CA 90036
Tele: 314-662-2836

Joseph Lyon, #351117
jlyon@thelyonfirm.com
**THE LYON FIRM**
2754 Erie Avenue
Cincinnati, Ohio 45208
Tele: 513-381-2333
Fax: 513-766-9011

*Attorneys for Plaintiff and the Proposed Class and Subclass*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LINDA LARSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JUSTANSWER LLC<br><br>Defendant. | Case No. 2:25-cv-10174-WLH-MAA<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**(1) Violation of the Electronic Funds Transfer Act 15 U.S.C. 1693, *et seq.***<br><br>**(2) Violation of the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA) (Tex. Bus. & Com. Code §§ 17.41, *et seq.*)**<br><br>**(3) Violation of the California** |

| | |
|---|---|
| | **Automatic Renewal Law (Bus. & Prof. Code, § 17600, *et seq.*)**<br><br>**(4) Violation of the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, et seq.)**<br><br>**(5) Violation of the California Unfair Competition Law Business and Professions Code section 17200, *et seq.*)**<br><br>**(6) Conversion**<br><br>**(7) Negligent Misrepresentation**<br><br>**(8) Unjust Enrichment**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW, Plaintiff LINDA LARSON ("Plaintiff"), individually and on behalf of all others similarly situated as defined below, and states as follows:

## <u>JURISDICTION AND VENUE</u>

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under the Electronic Funds Transfer Act 15 U.S.C. 1693, *et seq*.

2. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class and subclass are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of the proposed class and subclass, and at least one member of the proposed class and subclass, including Plaintiff, is a citizen of a state different than JustAnswer.

3. This Court has personal jurisdiction over JustAnswer because

JustAnswer conducts business in California, including within this District. Defendant is headquartered in this District and, therefore, has sufficient minimum contacts with this state.

4. Under 28 U.S.C. 1391, venue lies in this District because JustAnswer maintains its principal place of business within this District and makes decisions related to its marketing and/or advertising and/or promotion of its answer service from its headquarters and are thus subject to the court's personal jurisdiction as indicated above. Additionally, this action is brought in this District because it is the District in which JustAnswer has its principal place of business and/or is doing business. *See*, **Exhibit A**, Venue Affidavit.

## PARTIES

5. Plaintiff Linda Larson ("Plaintiff Larson") is a citizen of the State of Texas, residing in the state of Texas.

6. Defendant JustAnswer LLC ("JustAnswer") is a limited liability company organized under the laws of Idaho with its principal place of business located at 440 N Barranca Avenue #7508 located in Covina, California 91723. JustAnswer LLC is wholly owned by JustAnswer Holding Corporation, organized under the laws of Idaho with a principal place of business located in Covina, California. JustAnswer LLC is therefore a citizen of the states of Idaho and California.

## JUSTANSWER'S UNFAIR AND/OR DECEPTIVE SCHEME

7. JustAnswer operates a website, www.justanswer.com, on which users can ask "experts" to answer questions on a wide variety of topics, including, among others, medical, legal, tax, veterinary, computer, and electrical.

8. Once someone lands on the website, the User is alleged to be automatically subjected to an arbitration agreement without even knowing it and

without consenting to it.

9. In pertinent part, the purported Terms of Service state:

> **1. Acceptance of Terms**
>
> Welcome to JustAnswer ("Service" or "Site"), owned and operated by JustAnswer LLC ("JustAnswer"). By […] **using the Site in any way, you are agreeing to comply with and be bound by this Agreement**, the Privacy Policy, and all rules, policies, and disclaimers posted on the Site or about which you are notified (collectively "Terms"). Please review all of the Terms carefully **before** using the Site.
>
> **"By using the Site**, you (i) agree to be bound by the Terms, (ii) represent that you are over the age of thirteen (13) and able to form legally binding contracts, (iii) agree and acknowledge that by using the Service you are accepting a benefit that cannot be disgorged, (iv) acknowledge that the service is subject to U.S. export controls and agree that you will comply with U.S. export controls, and (v) represent that you are neither located in a sanctioned country nor a prohibited person."

(Emphasis added).

10. Plaintiff and the proposed Class and Subclass use the site before they have even seen the purported terms. And the only way to view the terms is to use the Website.

11. JustAnswer does this to keep Complaints against it out of the public view. This is because the purported Terms of Service contain an arbitration provision that JustAnswer attempts to use as a shield to protect itself from court scrutiny.

12. Additionally, JustAnswer reserved the right to modify the terms of the purported Terms of Service, including the section on arbitration by "posting on the website": "JustAnswer may modify any of the Terms at any time by posting them on the Site" and indicated that "If you do not accept the changes, your sole and exclusive remedy is to cancel your account and discontinue using the Site. The latest

Terms will be posted on the Site, and you should always review them prior to using the Site." But it is impossible to review the terms without visiting the site, as that is where the purported updated terms are posted.

13. JustAnswer describes itself in a non-conspicuous link as "a venue for informational and educational purposes, owned and operated by JustAnswer, that exists solely to broker relationships between Experts and potential Customers of those Experts who are interested in purchasing their Expert services. JustAnswer is not in the business of providing or selling information or education that is within any Expert's area of Expertise."

14. Users can access the JustAnswer website on a standard computer, such as a desktop or laptop, or a mobile device.

15. When a user first accesses the JustAnswer website, they are informed they can "[t]alk to doctors, lawyers, vets, [and] more in minutes" and are presented with a box where they can type a question.

16. JustAnswer also solicits clients through on-line sites such as: pissedconsumers.com or gethuman.com[1] and Google.com.

17. There are a variety of links displayed on these sites that will take the user to the JustAnswer website.

18. The JustAnswer website displayed after pressing these links can be confusing to the user as the website will display JustAnswer Playstation Support, JustAnswer Groupon Support, JustAnswer Microsoft Support … etc.

19. Some users actually believe they are speaking with those companies' customer support departments.

---

[1] Upon information and belief, these websites are set up to assist users in getting customer support assistance from companies such as Groupon, Microsoft or Playstation.

20. As early as October of 2021 and, upon information and belief, at the time that Plaintiff interacted with JustAnswer, JustAnswer did not meaningfully disclose the fact that it was going to automatically renew Plaintiff and members of the proposed Class and Subclass into its subscription program by asking for help on an issue and providing payment for that service.

21. See, for example, this exemplar marketing material from about October 20, 2021, per Wayback Machine in which there is no reference to a membership fee.




Https://web.archive.org/web/20211020140922/https://www.justanswer.com/microsoft-office/.

22. The bold portions of its marketing materials infer that JustAnswer is offering a service - to "ask an expert" (not experts) to "fix your issue" (not issues) – implying a one-time deal. Upon information and belief, after inserting a question into the chatbot box, JustAnswer's chatbot provides a link to a payment page while it works to connect the user with an expert.

23. Upon information and belief, the payment page looks something in material aspects similar to the following:




24. However, it isn't surprising that those who provide their payment card information to JustAnswer to answer a question are shocked to see that JustAnswer charged more than the initial charge as, upon information and belief, when you move your mouse on the payment screen, the following pop up screen appears, blocking the portion of the website that had any reference (albeit in small fine print with additional areas on the website that already pulls one's attention away) to a monthly fee) and leaving "fix your issue with expert" still large and bold and a bright green "I'd like my answer now" in the largest and/or or most colorful font.




*See*, https://my-secure.justanswer.com/membershiponly/payment?pqid=0f63bf19cc7640f9b311fb87f2dfde0d&va=599fdbcb1fbc44b29189be7d47b2fb97&vaname=tech_v3_0_1_us_javelin_128305.json&referral=pearlwilson&ppcvertical=tech&spwd=false&scgname=tuvnt0nyzwrpdenhcmreew5hbwljq2ftcgfpz25zu0vn&scname=q3jlzgl0q2fyzf9tru1ftm9ucmlhbf9vbmxpbwl0zwrnb250agx5x0rlc2t0b3bfrhluyw1pyw&r=impact%7c171711%7cask+an+expert+%40+www.askanexpertonline.com+-+link%7c&javatar=askanexpertonline.com&javatarvisitorguid=ebd1b755-2b8f-46d7-f44c-2aa4ea710f93&clickid=rgc2h02vfxykwqorxp11pvq4ukhswrvtes7iys0&aff_sub_id2=askanexpertnta&aff_sub_id3=119056340&aff_sub_id4=3577035bda73a41e000001901252c88fd&javatargaclientid=721496688.1717437093&javatargasessionid=1718294345&_ga=2.74520210.1233772901.1718294345-721496688.1717437093

25. The above pop-up screen fails to meaningfully highlight the recurring nature and/or negative option nature of the service, focusing on instead that an expert is "online right now and ready to answer your question" – not questions. The bright large green button indicates "I'd like my answer now" – not click this button to pay for your recurring membership.

26. Upon information and belief, in order to get back to the previous screen, the user is required to click the "I'd like my answer now", which places the user's cursor parallel to the payment information boxes for Plaintiff and the proposed Class and Subclass to insert their respective payment card information data onto the screen and press the bright green confirm now button.

27. Its purportedly happy customers do not even appear to be aware that they are automatically renewed into a subscription program as JustAnswer implies in its marketing that the payment and service is a one-time occurrence:




28. There are no clear and conspicuous, meaningful disclosures, or otherwise transparent mention of an ongoing membership fee on the landing page of

JustAnswer.com. There are no clear and conspicuous, meaningful disclosures, or otherwise transparent mention that there are purported terms that include an arbitration provision that apply upon visiting the website and/or even attempting to viewing purported terms.

29. At all relevant times, the large font, video background, and moving font distract the reader and encourages the reader to enter their request for help in a Chatbox. Once the user enters a question in the box and clicks "Start Chat," the Chatbot, after asking a series of questions, ultimately takes the user to a payment page substantially similar to the payment page described above pops up blocking the already non-conspicuous, non-transparent language, leaving the words "one-time $5 join fee and".

30. Once taken to the payment page, customers pay anywhere between $1 to $5 to have their questions answered.

31. However, JustAnswer, at all relevant times, has enrolled these customers in an automatically renewing $46.00 dollar membership they didn't meaningfully disclose.




32. As another example and as shown in the image above, the page states, in fairly large black print against a white background, what is visible states: "Fix

your account issue with support now."

33. Above that, it states "justanswer Computer."

34. Below, in smaller print, what remains visible states: "Unlimited conversations—one-time $5 join fee and".

35. Then there is a large orange button that says, "Confirm now."

36. Upon information and belief, the underlined "terms of service" in small font above the big bright colored button on the payment page is a hard to see hyperlink that took the user to another webpage that was entitled Terms of Service, which included, among other things, an arbitration clause, a class action waiver, and a disclaimer that JustAnswer does not "guarantee any particular level of expertise" from their experts and refers to itself as "a Venue": "The JustAnswer Site is a venue for informational and educational purposes, owned and operated by JustAnswer, that exists solely to broker relationships between Experts and potential Customers of those Experts who are interested in purchasing their Expert services. JustAnswer is not in the business of providing or selling information or education that is within any Expert's area of Expertise. Users of the Site, not JustAnswer, provide the content in Posts (defined below). The Experts determine which questions to answer; Experts are not employees or agents of JustAnswer but are independent service providers using the Site to sell their Expert knowledge to Customers and, as such, together with Customers, are simply Users of the Site."

37. JustAnswer is unfair in that it conspicuously markets its service as "Ask a question and get an answer to your question from a verified Expert on JustAnswer, the leading Expert question and answer website. Ask an Expert now!" however in hidden in its purported terms: "Use of the term 'Expert' by JustAnswer and on the Platform is only meant to describe Users who answer questions on the Platform, and not to guarantee any particular level of expertise of these Experts."

38. Yet, to the public, JustAnswer's marketing page provides: "justanswer Ask Experts & get answers to your questions – ASAP […] Each Expert on JustAnswer has passed a rigorous application and credential-verification process." https://web.archive.org/web/20211115085608/https://www.justanswer.com/general/experts.html (Archive of Webpage on 11/15/2021).

39. This means that Plaintiff and the proposed Class and Subclass did not even get what they paid for – connection to an actual expert.

40. JustAnswer induced the Plaintiff and members of the proposed Class and Subclass into adhesion contracts, whose terms are procedurally and substantively unconscionable and failed to provide contract terms that are just and reasonable.

41. Without prospective injunctive relief, JustAnswer could continue those practices.

42. In fact, running a search on Google for: Microsoft charges help results in the following response:




43. The fine print at the bottom of the asktech.support screen once you visit the link provides: "Powered by JustAnswer", so users may not even know they are communicating with JustAnswer, as the interactive part of the website is at the top and follows you as you scroll all the way down – if you get that far.

44. JustAnswer could keep making different websites to trick Plaintiff and the members of the proposed Class.

45. By JustAnswer's language in its purported terms, before Plaintiff could have even read anything on the Website, Plaintiff was caught in its web of terms. Illusory terms that JustAnswer could change at any moment:

> "**A. The Terms**
> 1. Acceptance of Terms
> Welcome to JustAnswer ("Service" or "Site"), owned and operated by JustAnswer LLC ("JustAnswer"). **By** clicking "I Agree" on the account registration or payment page or u**sing the Site in any way, you are agreeing to comply with and be bound by this Agreement**, the Privacy Policy, and all rules, policies, and disclaimers posted on the Site or about which you are notified (collectively "Terms"). Please review all of the Terms carefully before using the Site."

*See*, https://web.archive.org/web/20211101063056/https://www.justanswer.com/info/terms-of-service (emphasis added).

46. The terms further stated:

> By using the Site, you (i) agree to be bound by the Terms, (ii) represent that you are over the age of thirteen (13) and able to form legally binding contracts, (iii) agree and acknowledge that by using the Service you are accepting a benefit that cannot be disgorged, (iv) acknowledge that the service is subject to U.S. export controls and agree that you will comply with U.S. export controls, and (v) represent that you are neither located in a sanctioned country nor a prohibited person.

*See*, https://web.archive.org/web/20211101063056/https://www.justanswer.com/info/terms-of-service

47. Again, by the time that the user lands on the website, the user is not required to actually view the hyperlinked terms of service in order to begin using JustAnswer's website and by using the website JustAnswer attempts to imprison by

the User with its one-sided terms.

48. Furthermore, JustAnswer could change any part of the purported Terms of Service at any moment, without notifying the person:

> JustAnswer may modify any of the Terms at any time by posting them on the Site. Changes shall automatically be effective upon posting; provided, however, that those changes that JustAnswer, in its sole discretion, deems material changes to the Terms will be effective as to an existing User upon the earlier of: (1) the agreement of the User; or (2) thirty (30) days after notice to the existing User from an @justanswer.com email address to the User's email address on file with JustAnswer or via other means including, but not limited to, a pop-up or banner, message, or other conspicuous notice on the JustAnswer website. If you affirmatively agree to the new terms, your agreement will be effective immediately. You agree to make any and all necessary arrangements so that you (and not your spam filter) receive all emails from JustAnswer email addresses. Your continued use of the Service will signify your acceptance of the changes. If you do not accept the changes, your sole and exclusive remedy is to cancel your account and discontinue using the Site. **The latest Terms will be posted on the Site, and you should always review them prior to using the Site.**

*See*, https://web.archive.org/web/20211101063056/https://www.justanswer.com/info/terms-of-service

49. Even if users were to click on the hyperlinked terms and conditions, they would be unlikely to see that JustAnswer's hidden membership automatically renews for "time periods (e.g, monthly, annually) set forth at the time of sign up" for those who so elect. However, the membership is not something that someone elects – it is something that is unlawfully tied to asking a question on JustAnswer without being meaningfully disclosed.

50. JustAnswer buried this information in dense text and does not provide clear and conspicuous disclosures as required by law.

51. JustAnswer goes out of its way to avoid saying in conspicuous font size: "To have a question answered, you have to pay $1 (or $5) plus $46.00 a month until you can get ahold of us to cancel."

52. Instead, once a user submits their payment information and clicks on the "Connect now" button, they are automatically enrolled in a recurring monthly membership.

53. Plaintiff and the Proposed Class and Subclass believed they were paying anywhere between $1 to $5 to have their questions answered.

54. Instead, a user could be paying in some cases over $60.00 to have one question answered and then paying $60.00 every month thereafter whether or not they ask another question.

55. In some advertisements and marketing, JustAnswer makes it seem like Plaintiff and the Proposed Class and Subclass are speaking directly with other companies' actual customer support departments. In all advertisements and marketing, JustAnswer makes it seem like the customer is being paired with an Expert. Neither is true.

56. Consumers have been injured by JustAnswer's practice of renewing consumers' "subscriptions" without their knowledge or consent and making it difficult for consumers to cancel their subscriptions once they realized they have been subscribed.

57. The website Reseller Ratings[2] provides some examples that chronicle their common grievances. Customer Reviews give JustAnswer 1.00 out of 5 stars with numerous billing complaints such as the following:

[2] https://www.resellerratings.com/store/JustAnswer

1/5 2022-09-07

## SCAM!

"Their website makes it look like you can sign up for a $5 trial but when I used Paypal to pay for it, I was charged $65...$5 to sign up (SCAM) and $60 for the first month of membership (SCAM). I immediately tried to contact them via phone multiple times, email, and again on the website (where the "chat" person wouldn't allow me to ask any further questions). They sent me an email saying my membership was canceled and no "additional" funds would be withdrawn from my account. This is a shady outfit indeed!"

1/5 2022-09-12

## scam

"answers generic, just use google. They will try to charge you each month and won't refund money."

1/5 2022-10-07

## Not worth it!!

"They billed me 66 for a montly subscription that i had no idea about. I ended up solving my problem on my own. I expected to pay $2 not $66 on top pf that. What a rip off!! I called and they refused to give me a refund. So mad"

### I'd rate a negative star if I could

"I had a question about something and JustAnswer popped up with a message that offered help for $5. I thought that was reasonable, so I put in my information. Then I get the invoice that shows I signed up for a membership at $55 per month and see that my credit card has a $55 pending charge for JustAnswer in addition to the $5 I thought I was being charged. I called them immediately (same day) and was told that I'd agreed to a membership, which I did not realize I'd agreed to (small print). I cancelled the membership and was told that I would not be charged the $55. The charge just posted to my credit card so I called again and was told that my money would not be refunded, as I'd agreed to a membership. I am not happy with JustAnswer."

1/5 2022-08-24

### Horrendous Experience- You need a lawyer to navigate their charges, 1.00 24.00 55.00 WTF??

"This was the worst online experience of all time. I went on looking for an answer on microwave repair (wrong site for this!) It said I had to pay 1.00 and would be refunded. I was then offered to talk to someone for 24.00 so I paid for that. When the person who was going to help me told me he only texts (I don't have time for that) I said I wanted my money back. I was credited back the 24.00 but see a charge for 55.00 (MONTHLY MEMBERSHIP) I never consented to a monthly 55.00 membership. This is egregious! I've never had a company do something like this before? I will be calling my CC company to suspend payment as it was unauthorized."

1/5 2022-08-28

### Don't ever consider them

"Needed some help with email account and somehow directed here on line. Did not help, then set up a recurrent charge to my credit card! Total scam. Criminal."

★☆☆☆☆ 1/5 2022-08-20

**Said costs $5 Charged $5 AND THEN $60**

"RIP OFF. I asked how much it would cost - I was told JUST $5 I just now received an alert from my Credit Card I was charged a second charge for $60. Why wasn't I told I would charged and additional $60? I would NOT have continued with process. on top of it. I told my ENTIRE issue with first person. They connected me to second person (Lawyer) but did not share the info so I had to start ALL OVER again (Lawyer said they are ALL independent contractors and don't share info). AWFUL experience. Wish I read all the reviews FIRST - SAME COMPLAINT everywhere."

58. The website www.magazinetimestoday.com featured an article entitled "Is JustAnswer Legit or a Scam? Understanding the Charges" and reported the following, in pertinent part:

> "[…] The platform allows users to submit questions, and in return, get quick responses from certified professionals. However, the pricing model is where things get confusing. While it appears to be a pay-per-question service, many users are automatically enrolled into a subscription during the sign-up process, often without fully realizing it.
>
> **Why Are People Questioning if JustAnswer Is Legit?**
>
> ⚠️ **Heads Up:** Many users discover recurring monthly charges between $46 and $55 only after reviewing their bank or credit card statements. This usually happens after they submitted what they thought was a one-time question, often for a nominal trial fee like $1 or $5.
>
> The confusion stems from how the trial is presented. During signup, users are enrolled in a full subscription unless they cancel within 7 days. Because this is buried in the fine print, many people don't realize they're committing to a monthly fee.
>
> This lack of clarity has led to a flood of complaints and questions like:

"Is JustAnswer legit, or is this a scam?"

**Common Complaints About JustAnswer**

The most common user complaints include:

- Recurring monthly charges without a clear reminder or confirmation
- Charges after a $1 trial that users didn't expect to continue
- Difficulty canceling the subscription, either due to poor customer support or unclear cancellation steps
- No email notification when the free trial ends and the full charge begins
- Many people only find out they're subscribed after checking their billing statement weeks or even months later.

**How Do JustAnswer Subscriptions Work?**

JustAnswer runs on a trial-based subscription model that can easily confuse users. Here's a more straightforward explanation:

When you ask your first question, you'll be prompted to start a **trial for $1 to $5**, which gives you temporary access to their experts.

As part of the signup, you'll need to enter your **credit card details**, and the subscription terms are mentioned, usually in small print.

If you don't cancel the trial within **7 days**, it will automatically convert into a paid subscription. According to the official JustAnswer pricing page, the standard plan costs **$55 per month** and includes unlimited questions to experts.

There's also a premium plan (called "Membership Plus") that may include extra services like document reviews or phone consultations, depending on the category of your question.

Although the pricing is disclosed on their website, it's easy to miss because the offer feels like a one-time service. This lack of clarity has led to many users feeling blindsided by surprise charges."

*See,* https://magazinetimestoday.com/is-justanswer-legit-or-scam/. (last

visited September 19, 2025).

59. The "ANA Accountability - Guidelines for Ethical Business Practice, as developed by Direct Marketing Association, provides guidelines for ethical business practice:

> **Accountability & Ethics in Marketing**
>
> **Guidelines for Ethical Business Practice**
>
> These Guidelines for Ethical Business Practice ("Guidelines") are intended to provide individuals and entities involved in data-driven marketing in all media with generally accepted principles of conduct. These Guidelines reflect the marketing industry's long-standing policy of promoting the highest levels of ethics in data stewardship and marketing and ae the result of decades of development by marketers (via the Direct Marketing Association which was acquired by ANA in 2018.)
>
> […]
>
> In addition to providing general guidance and enforceable standards to the industry, the Guidelines are used by ANA's Committee on Ethical Business Practice Enforcement ("Committee") as the standard to which data and marketing promotions are examined. The Committee is comprised of seasoned marketing professionals who review consumer complaints and seek voluntary compliance with these Guidelines to enhance consumer trust in the marketing process. […]
>
> […]
>
> Guidelines provide the basis for ethical data and marketing practices and compliance primarily under U.S. standards and expectations. […].

See, **Exhibit B**, Guidelines for Ethical Business Practice.

60. The guidelines include the following with respect to the standard regarding Advance Consent / Negative Option Marketing:

## II. ADVANCE CONSENT/NEGATIVE OPTION MARKETING

These Guidelines apply to all media and address marketing plans where the consumer gives consent to receive and pay for goods or services in the future on a continuing or periodic basis, unless and until the consumer cancels the plan. The following should apply to all advance consent or negative option marketing plans:

1. Initial Offer

**Consent.** Regardless of channel, marketers should have the consumer's express informed consent to participate in any advance consent or negative option marketing plan before the consumer is billed or charged. For example, a pre-checked box without further action, such as clicking a response button or sending back a response to confirm individual consent is not sufficient. In telephone sales where the consumer agrees to the offer in a way other than by credit or debit card payment, the consumer consent must be written or audio recorded.

• Marketers should inform consumers in the initial offer of their right to cancel their participation in the plan and any outstanding fees that may be owed.

• Marketers should inform consumers in the initial offer of the length of any trial period, including a statement that the consumer's account will be charged after the trial period (including the date of the charge) unless the consumer takes an affirmative step to cancel, providing the consumer a reasonable time period to cancel, and the steps needed to avoid charges.

**Material Terms & Conditions.** Regardless of channel, marketers should clearly and conspicuously disclose all material terms and conditions before obtaining the consumer's billing information, including:

• A description of the goods or services being offered;
• The identity of the marketer and contact information for service or cancellation;
• The interval between shipments or services to be provided;

• The price or the range of prices of the goods or services purchased by the consumer, including whether there are any additional charges;
• Whether the consumer will be billed or automatically charged;
• When and how frequently the consumer will be billed or charged;
• Any terms with regards to a "free to keep" incentive as applicable;
• The fact that the consumer must take affirmative action to cancel in order to avoid future billing or charges;
• The specific and easy steps that consumers should follow to cancel the plan and to stop recurring charges from being placed on the consumer's account; and
• The time period within which the consumer must cancel.

When applicable, the following terms and conditions should also be clearly and conspicuously disclosed in the initial offer:

• That the current plan or renewal prices of the goods or services are subject to change;
• The length of any free, trial or approval period in time or quantity;
• The length of membership period, and the length of subsequent renewal or billing periods;
• The fact that goods or services will continue after the free period unless the consumer cancels;
• Any minimum purchase obligations; and
• The terms and conditions of any refund policy.

In instances where the marketer uses pre-acquired account information under a free-to-pay conversion plan, the marketer should:

• Obtain from the consumer the complete account number to be charged within the appropriate data security protocols (such as PCI compliance);
• Obtain affirmative consent from the consumer to charge such account; and
• Provide channel specific proof (an email or hard copy confirmation, or if via telephone, audio record the entire transaction).

In instances where the marketer uses pre-acquired account information but does not engage in a free-to-pay conversion plan, the marketer should:

• Identify with specificity the account that will be charged; and
• Obtain affirmative consent from the consumer to charge such account.

2. Providing the Goods & Services to the Consumer

• Marketers may provide products or services and bills concurrently; however, consumers should not be obligated to pay bills prior to the expiration of any trial period.
• Marketers should inform consumers in renewal reminders of their right to cancel their participation in the plan, and any outstanding fees owed.
• Marketers should provide renewal reminders at the frequency specified in the initial offer.

3. Cancellation
• Marketers should promptly honor requests for refunds due upon consumers' cancellation of the plan.
• Marketers should allow consumers a reasonable length of time between receipt of renewal reminders and the renewal date, after which consumers can cancel the plan. • Marketers should honor the time period they provided for a cancellation and should honor a cancellation after the expiration of the trial period.

[…]

All marketing partners or service providers should comply with these Guidelines.

[…]

**XIII. LAWS, CODES, AND REGULATIONS**

Marketers should operate in accordance with laws and regulations of the United States Postal Service, the Federal Trade Commission, the Federal Communications Commission, the Federal Reserve Board, and other applicable federal, state, and local laws governing advertising, marketing practices, and the transaction of business.

61. JustAnswer failed to meet many of the standards as outlined throughout

the Complaint.

62. The Federal Trade Commission (FTC) Act's Section 5 is the primary federal statute that governs the use of ARL provisions. The FTC's guidance on negative option features advises businesses to adhere to five fundamental principles for compliance. *See* **Exhibit C,** *Negative Options – A Report by the staff of the FTC's Division of Enforcement*. The five principles are as follows:

- **Principle One.** Marketers should disclose the material terms of the offer in an understandable manner (See *Id*. at p. 36);
- **Principle Two.** Marketers should make the appearance of disclosures clear and conspicuous (See *Id*. at p. 37);
- **Principle Three**. Marketers should disclose the offer's material terms before consumers pay or incur a financial obligation (*See Id.* at p. 37-38);
- **Principle Four**. Marketers should obtain consumers' affirmative consent to the offer (See *Id*. at p. 38); and
- **Principle Five**. Marketers should not impede the effective operation of promised cancellation procedures (*See Id.*).

**California Automatic Renewal Law**

63. This course of conduct violates the California Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.) ("ARL"), which is part of California's False Advertising Law; the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) ("CLRA"); and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) ("UCL").

64. In 2009, the California Legislature passed Senate Bill 340, which took effect on December 1, 2010, as Article 9 of Chapter 1 of the False Advertising Law. (Bus. & Prof. Code, § 17600 *et seq.* (the California Automatic Renewal Law or "ARL")). (Unless otherwise stated, all statutory references are for the Business &

Professions Code). SB 340 was introduced because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to. (*See* **Exhibit D** at p. 4.)

65. The Assembly Committee on Judiciary provided the following background for the legislation:

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal. (*See* **Exhibit E** at p. 1.)

66. The ARL seeks to ensure that before there can be a legally binding automatic renewal or continuous service arrangement, there must first be clear and conspicuous disclosure of certain terms and conditions and affirmative consent by the consumer. To that end, § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

a) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off

from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." (§ 17601(c).) "In the case of an audio disclosure, 'clear and conspicuous' … means in a volume and cadence sufficient to be readily audible and understandable." (Ibid.) The statute defines "automatic renewal offer terms" to mean the "clear and conspicuous" disclosure of the following: (1) that the subscription or purchasing agreement will continue until the consumer cancels; (2) the description of the cancellation policy that applies to the offer; (3) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; (4) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (5) the minimum purchase obligation, if any. (Bus. & Prof. Code § 17601(b).)

b) Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time. (Bus. & Prof. Code § 17602(a)(2).)

c) Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. (Bus. & Prof. Code, § 17602(a)(3).) Section 17602(b) requires that the acknowledgment specified in § 17602(a)(3) include a toll-free telephone number, electronic mail

address, or another "cost-effective, timely, and easy-to-use" mechanism for cancellation.

67. If a business sends any goods, wares, merchandise, or products to a consumer under a purported automatic renewal or continuous service arrangement without first obtaining the consumer's affirmative consent to an agreement containing the "clear and conspicuous" disclosures as specified in the ARL, the goods, wares, merchandise, and/or products are deemed to be an unconditional gift to the consumer, who may use or dispose of them without any obligation whatsoever. (Bus. & Prof. Code, § 17603.) Violation of the ARL gives rise to restitution and injunctive relief under the general remedies provision of the False Advertising Law, Bus. & Prof., Code § 17535. (Bus. & Prof. Code, § 17604(a).) As well, violation of the ARL gives rise to restitution and injunctive relief under the UCL.

## PLAINTIFF LARSON'S EXPERIENCE

68. Around February 14, 2022 (Valentine's Day), Plaintiff Larson contacted JustAnswer while attempting to resolve charges related to her son's Microsoft video game.

69. Rather than providing assistance, JustAnswer itself began charging her a recurring monthly fee of approximately $46.00.

70. At first, Plaintiff Larson did not realize that JustAnswer was the source of these charges, as the billing descriptor misleadingly appeared as "Tech Geek," causing her to believe the charges were associated with Geek Squad or another legitimate technology service provider.

71. When Plaintiff Larson eventually realized her mistake and discovered that the charges were in fact coming from JustAnswer, she spent years trying to have the recurring charges removed. She contacted her bank, researched the charges, and attempted to reach JustAnswer, but was repeatedly unsuccessful in obtaining

cancellation or relief due to JustAnswer's deliberately confusing billing practices.

72. Ultimately, Plaintiff Larson was not able to obtain relief or have the automatic monthly charge stopped until the spring of 2025, more than three years after JustAnswer first began debiting her account.

73. During this time, Plaintiff Larson paid JustAnswer more than $1,000.00 in unauthorized recurring fees.

74. She never knowingly agreed to a monthly membership or subscription with JustAnswer, and she received no clear, conspicuous, or affirmative disclosures regarding any such automatic renewal program.

75. Had she been informed, she would never have assented to recurring charges. JustAnswer's practices caused Plaintiff Larson substantial financial injury, wasted her time and resources, and inflicted emotional distress, particularly given the irony that the charges began on Valentine's Day—the very day she was attempting to stop improper charges on her son's account.

## I. CLASS ACTION ALLEGATIONS

76. Plaintiff and the Proposed Class' and Subclass's claims all derive directly from a single course of conduct by JustAnswer. It engaged in uniform and standardized conduct—its marketing and billing tactics. This case concerns JustAnswer's responsibility, under law and in equity, for its knowledge and conduct in deceiving its customers. This conduct did not meaningfully differentiate among individual members of the Proposed Class and Subclass in its degree of care or candor, its actions or inactions, or in the content of its statements or omissions. The objective facts on these subjects are the same for all members of the Proposed Class and Subclass.

77. Plaintiff brings this action individually and on behalf of all others similarly situated.

78. The proposed Class is defined as follows:

> All citizens of the State of Texas who paid JustAnswer to answer a question and were automatically enrolled into a recurring monthly subscription. (the "Class")

79. The EFTA Subclass is defined as:

> All citizens of the State of Texas who paid JustAnswer with a debit card to answer a question and were automatically enrolled into a recurring monthly subscription. (the "Subclass")

(Unless otherwise indicated, collectively referred to as the "Class")

80. Excluded from the Proposed Class and Subclass are JustAnswer, its subsidiaries and affiliates, its officers, directors, the members of their immediate families, and any entity in which JustAnswer has a controlling interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded are the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

81. Plaintiff reserves the right to modify or amend the definitions of the Proposed Class and Subclass before the Court determines whether certification is appropriate.

82. **<u>Numerosity.</u>** The members of the Proposed Class and Subclass are so numerous that a joinder of all members is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, Plaintiff believes the Proposed Class and Subclass number in the hundreds or thousands, if not more.

83. **<u>Typicality</u>.** Plaintiff's claims are typical of the claims of the members of the Proposed Class and Subclass because they sustained similar injuries to that of members of the Proposed Class and Subclass as a result of JustAnswer's uniform pattern of wrongful conduct, and their legal claims all arise from the same events

and wrongful conduct by JustAnswer.

84. **Adequacy of Representation.** Plaintiff is adequate representatives of the Proposed Class and Subclass because Plaintiff suffered damages as a result of JustAnswer's material omission that its services were subject to a recurring $46.00 monthly charge. In addition:

(a) Plaintiff is committed to the vigorous prosecution of this action individually and on behalf of all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of individuals and/or entities against companies who have unlawfully assessed one or more fees or charges;

(b) There is no hostility of interest between Plaintiff and the unnamed members of the Proposed Class and Subclass;

(c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

(d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal work associated with this type of litigation.

85. **Commonality.** Common questions of law and fact exist as to all members of the Proposed Class and Subclass and predominate over any questions solely affecting individual members of the Proposed Class and Subclass, including the following:

(a) Whether JustAnswer's conduct constitutes unfair, unlawful and/or fraudulent practices;

(b) Whether JustAnswer was unjustly enriched as a result of its pattern of wrongful conduct;

(c) Whether JustAnswer engaged in negligent misrepresentation;

(d) Whether JustAnswer's actions violate the applicable state consumer

protection statutes;

(e) Whether each Class Member is entitled to compensatory, statutory, treble, nominal, and/or punitive damages as a result of Defendants' violations of law;

(f) Whether Plaintiff and other members of the Proposed Class and Subclass sustained damages as a result of JustAnswer's pattern of wrongful conduct;

(g) Whether any or all applicable limitations periods are tolled by JustAnswer's acts;

(h) Whether, and to what extent, equitable relief should be imposed on JustAnswer to prevent it from continuing its pattern of wrongful conduct; and

(i) The extent of class-wide injury and the measure of damages for those injuries.

86. **Ascertainability.** Members of the Proposed Class and Subclass can easily be identified by an examination and analysis of the business records maintained by JustAnswer, among other records within its possession, custody, or control.

87. **Predominance.** The common issues of law and fact identified above predominate over any other questions affecting only individual members of the Proposed Class and Subclass. The issues of the Proposed Class and Subclass fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on JustAnswer 's pattern of wrongful conduct.

88. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since a joinder of all members of the Proposed Class and Subclass is impracticable. Furthermore, as damages suffered by members of the Proposed Class and Subclass may be relatively small, the expense and burden of individual litigation make it impossible for them to

individually redress the wrongs done to them. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

89. Accordingly, this class action is properly brought and should be maintained as a class action because questions of law or fact common to members of the Proposed Class and Subclass predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

90. This class action is also properly brought and should be maintained as a class action because Plaintiff seeks injunctive relief and declaratory relief on behalf on grounds generally applicable to all members of the Proposed Class and Subclass.

91. Certification is appropriate because JustAnswer acted or refused to act in a manner that applies generally to the Proposed Class and Subclass, making final declaratory or injunctive relief appropriate.

92. **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). JustAnswer, through JustAnswer's uniform conduct, acted or refused to act on grounds generally applicable to the proposed Class as a whole, making injunctive and declaratory relief appropriate to the proposed Class as a whole. Injunctive relief is necessary and proper to compel JustAnswer to cease its violations of the UCL alleged herein and to prevent Plaintiff and Members of the proposed Class from being duped accidentally into signing up again as JustAnswer's Sponsored content appears to be different brands.

93. Likewise, particular issues under Rule 23(c)(4) are appropriate for

certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

**FIRST CAUSE OF ACTION**

**Violation of the Electronic Funds Transfer Act**

**15 U.S.C. 1693, *et seq*.**

**(On behalf of Plaintiff and the Subclass)**

94. Plaintiff Larson realleges and incorporates by reference all of the foregoing allegations as if fully set forth herein.

95. Plaintiff seeks to recover for JustAnswer's violations of the Electronic Funds Transfer Act on behalf of herself and the proposed Subclass.

96. The EFTA provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system. 15 U.S.C. §§ 1693 et seq. The "primary objective" of the EFTA "is the provision of individual consumer rights." Id. § 1693(b).

97. Any waiver of EFTA rights is void. "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter." 15 U.S.C. § 1693l.

98. JustAnswer's transfers of money from the bank accounts of Plaintiff and members of the proposed Subclass, via their debit cards, as alleged herein, are "electronic fund transfers" within the meaning of the EFTA and the EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205 *et seq*. An "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic

tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(7). The term is expressly defined to include "[t]ransfers resulting from debit card transactions, whether or not initiated through an electronic terminal." 12 C.F.R. § 205.3(b)(v).

99. The EFTA defines the term "preauthorized electronic transfer" as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(9). The Official Staff Interpretation of Regulation E describes a "preauthorized electronic transfer" as "one authorized by the consumer in advance of a transfer that will take place on a recurring basis, at substantially regular intervals, and will require no further action by the consumer to initiate the transfer." 12 C.F.R. Part 205, Supp. I, § 205.2(k), cmt. 1.

100. Section 1693e(a) of the EFTA prohibits preauthorized electronic transfers without written authorization: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). Similarly, Regulation E provides: "Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. § 205.10(b).

101. Plaintiff and members of the proposed Subclass each maintained an "account" as that term is defined in 15 U.S.C § 1693a(2) and are "consumers" within the meaning of 15 U.S.C. § 1693a(5).

102. JustAnswer uniformly and routinely initiated preauthorized electronic fund transfers and took money from the bank accounts of the Plaintiff and members of the proposed Subclass without obtaining their written authorization for the transfers, as required by the proposed EFTA and Regulation E. JustAnswer also

uniformly and routinely failed to provide a copy of any such written authorization to Plaintiff and the proposed Subclass members from whose bank accounts JustAnswer took preauthorized electronic fund transfers for monthly membership fees.

103. JustAnswer took funds from bank accounts managed by Plaintiff via debit card. In none of these instances did JustAnswer obtain Plaintiff's written authorization, nor did JustAnswer provide Plaintiff with copies of any such written authorizations.

104. The Official Staff Interpretation of Regulation E explains, "when a third-party payee," such as JustAnswer, "fails to obtain the authorization in writing or fails to give a copy to the consumer … it is the third-party payee that is in violation of the regulation." 12 C.F.R. Part 205, Supp. I, § 205.10(b), cmt. 2.

105. As a direct and proximate result of JustAnswer's violations of the EFTA and Regulation E, Plaintiff and the proposed Subclass members have suffered damages in the amount of the unauthorized debits taken by JustAnswer. 15 U.S.C. § 1693m. As a further direct and proximate result of JustAnswer's violations of the EFTA and Regulation E, Plaintiff and the proposed Subclass members are entitled to recover statutory damages in the amount of "the lesser of $500,000 or 1 per centum of the net worth of the defendant." Id. § 1983m(a)(2)(B).

106. Pursuant to 15 U.S.C. § 1693m, Plaintiff and the proposed Subclass are also entitled to recover costs of suit and attorneys' fees from JustAnswer.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES–CONSUMER PROTECTION ACT (DTPA)**

**(Tex. Bus. & Com. Code §§ 17.41, et seq.)**

**(On Behalf of Plaintiff Larson and the Proposed Class)**

107. Plaintiff Larson realleges and incorporates by reference all of the foregoing allegations as if fully set forth herein.

108. The Texas Deceptive Trade Practices – Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq*., prohibits false, misleading, and deceptive acts or practices in the conduct of trade or commerce.

109. Plaintiff Larson is a "consumer" as defined by Tex. Bus. & Com. Code § 17.45(4). JustAnswer's conduct was a producing cause of actual damages to Plaintiff Larson, including unauthorized recurring charges, loss of time, and out-of-pocket costs.

110. JustAnswer engaged in false, misleading, and deceptive practices within the meaning of Tex. Bus. & Com. Code § 17.46(b), including but not limited to: (a) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (b) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not; (c) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (d) advertising goods or services with intent not to sell them as advertised; (e) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another; (f) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; (g) representing that a guaranty or warranty confers or involves rights or remedies which it does not have or involve, provided, however, that nothing in this subchapter shall be construed to expand the implied warranty of merchantability as defined in Sections 2.314 through 2.318 and Sections 2A.212 through 2A.216 to involve obligations in

excess of those which are appropriate to the goods; and (h) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

111. JustAnswer engaged in an unconscionable action or course of action by engaging in an act or practice which, to the detriment of Plaintiff Larson, took advantage of the lack of knowledge, ability, experience, or capacity of Plaintiff Larson to a grossly unfair degree.

112. Because JustAnswer knowingly and intentionally engaged in deceptive and unconscionable conduct, Plaintiff Larson seeks treble damages under Tex. Bus. & Com. Code § 17.50(b)(1).

## THIRD CAUSE OF ACTION

**Violation of the California Automatic Renewal Law**

**(Bus. & Prof. Code, § 17600 et seq.)**

**(On Behalf of Plaintiff and the Proposed Class Members)**

113. Plaintiff incorporates the previous allegations as though fully set forth herein.

114. Plaintiff is informed and believe and thereon allege that, during the applicable statute of limitations period, JustAnswer has enrolled consumers, including Plaintiff and proposed Class members, in an automatic renewal program and have violated the ARL by, among other things, (a) failing to present automatic renewal offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to a request for consent to the offer; (b) charging the consumer's credit card, debit card, or third-party payment account for

an automatic renewal without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms; and (c) failing to provide an acknowledgment that includes clear and conspicuous disclosure of all automatic renewal offer terms, the cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer and that provides a mechanism for cancellation that is cost-effective, timely, and easy to use, all in violation of § 17602(a) and (b).

115. Plaintiff has suffered injury in fact and lost money as a result of JustAnswer's violations of ARL.

116. Pursuant to Bus. & Prof. Code § 17535, Plaintiff and the proposed Class members are entitled to restitution of all amounts that JustAnswer charged to Plaintiff's and Class members' credit cards, debit cards, or third-party payment accounts in connection with an automatic renewal membership program during the four years preceding the filing of this Complaint and continuing until JustAnswer's statutory violations cease.

117. Unless enjoined and restrained by this Court, JustAnswer will continue to commit the violations alleged herein. Pursuant to § 17535, on behalf of themselves, the proposed Class members, and for the benefit of the general public of the State of California, Plaintiff seeks an injunction prohibiting JustAnswer from continuing their unlawful practices as alleged herein.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*)**

**(On Behalf of Plaintiff and the Proposed Class)**

118. Plaintiff incorporates the allegations of the previous paragraphs as though set forth herein.

119. California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

120. JustAnswer's answer service pertains to "goods" or "services" within the meaning of Civil Code § 1761(a) and (b).

121. Plaintiff and the proposed Class Members are "consumers" within the meaning of Civil Code § 1761(d) in that Plaintiff sought or acquired JustAnswer's goods and/or services for personal, family, or household purposes by purchase or lease.

122. Plaintiff, the other proposed Class members, and JustAnswer are "persons" as defined in Cal. Civ. Code § 1761(c).

123. The payments by Plaintiff and proposed Class members are "transactions" within the meaning of Civil Code § 1761(e).

124. JustAnswer has violated Civil Code § 1770, subdivisions (a) by:

- (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;
- (9) advertising goods and services with the intent not to sell them as advertised;
- (14) representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law;
- (19) inserting an unconscionable provision in the contract;
- (29)(A) advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either of the following: (i) Taxes or fees imposed by a government on the transaction. (ii) Postage or carriage charges that will be reasonably and actually incurred to ship the physical good to the

consumer; and

- Engaging in other acts and/or practices in violation of the CLRA that discovery will uncover.

125. JustAnswer intentionally and knowingly misrepresented and omitted material facts regarding the answer service with an intent to mislead Plaintiff and proposed Class members.

126. JustAnswer's actions as described herein were done with conscious disregard of Plaintiff's rights and JustAnswer was wanton and malicious in JustAnswer's concealment of the same.

127. In purchasing the answer service or goods, Plaintiff and other proposed Class members were deceived by JustAnswer's failure to meaningfully, adequately, and/or conspicuously disclose the recurring nature of the answer service or goods.

128. Plaintiff and other proposed Class members had no way of knowing JustAnswer's representations were false, misleading, and incomplete or knowing the true nature of the answer service product.

129. As alleged herein, JustAnswer's material omissions and/or deception is likely to – and does - lead to confusion.

130. Plaintiff and other proposed Class members did not, and could not, unravel JustAnswer's unfairness and/or deception on their own.

131. JustAnswer knew or should have known their conduct violated the CLRA.

132. JustAnswer owed Plaintiff and the proposed Class members a duty to disclose the truth about the renewing nature of the answer service product JustAnswer: (a) Possessed exclusive knowledge of the nature of the answer service product; (b) Intentionally failed to conspicuously disclose and/or otherwise meaningfully concealed the foregoing from Plaintiff and the proposed Class

members; and/or (c) Made incomplete representations in advertisements and on its website, failing to warn the public of the automatically renewing nature of the answer service.

133. JustAnswer had a duty to disclose that the answer service was continuing in nature, and Plaintiff had to take an affirmative step to stop JustAnswer from charging more than the conspicuously disclosed amount.

134. Plaintiff and the other proposed Class members relied on JustAnswer's material misrepresentations and/or omissions regarding the fees associated with the answer service and the negative option / automatically renewing nature of the answer service product.

135. Specifically, the material misrepresentation and/or omission was a substantial factor in Plaintiff and the proposed Class' respective decision.

136. Plaintiff and the proposed Class was harmed;

137. Plaintiff's and the proposed Class' harm resulted from JustAnswer's conducted described above;

138. Plaintiff and the other proposed Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of JustAnswer's conduct in that Plaintiff and the other proposed Class members incurred charges in an amount that exceeds what was conspicuously disclosed and that were unknowingly mandatory.

139. JustAnswer's violations can cause continuing injuries to Plaintiff and other proposed Class members as Plaintiff and the proposed Class Members could be tricked into purchasing JustAnswer's answer service again because JustAnswer uses different websites with different monikers that in the fine print disclose in a non-conspicuous way at the very bottom of the website that the website is powered by JustAnswer.

140. JustAnswer's unlawful acts and practices complained of herein affect the public interest.

141. JustAnswer knew of the confusing nature of its marketing materials for its answer service.

142. The facts concealed and/or omitted by JustAnswer from Plaintiff and other proposed Class members and/or not meaningfully and/or conspicuously disclosed are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase access to the answer service.

143. Had Plaintiff and the other proposed Class members known about the unfair nature of the mandatory negative option fee answer service, they would not have purchased the answer service or would have taken steps to cancel.

144. JustAnswer's unfair and/or unlawful acts, practices, representations, omissions, and/or courses of conduct, as described herein, were undertaken by JustAnswer in a transaction intended to result in, and which did result in, the sale or lease of goods or services to consumers.

145. Pursuant to § 1780(d) of the CLRA, attached hereto as **Exhibit A** is an affidavit showing that this action has been commenced in the proper forum.

146. Plaintiff's and the other proposed Class members' injuries were proximately caused by JustAnswer's unlawful and deceptive business practices.

147. Pursuant to Cal. Civ. Code § 1780(a), Plaintiff seeks an order enjoining JustAnswer from engaging in the methods, acts, or practices alleged herein, including further concealment of the negative option / autorenewal nature of the answer service and/or concealment of who is behind other answer service websites.

148. Pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff demands judgment against JustAnswer under the CLRA for damages, as well as, injunctive and equitable relief to enjoin the practices described herein.

149. Plaintiff has amended this Complaint to assert a claim for damages pursuant to Civil Code §1782. Plaintiff sent a CLRA notice letter to JustAnswer via certified mail, return receipt requested regarding JustAnswer's violations of the CLRA on October 23, 2025. *See*, **Exhibit F**, CLRA Letter with Proof of Mailing Certified Mail, Return Receipt Requested and tracking documents.

150. The notice letter sets forth the relevant facts, notifies JustAnswer of its CLRA violations, and requests that Defendant promptly remedy those violations.

151. In particular, under the CLRA, a plaintiff may, without prior notification file complaint alleging violations of the CLRA that seeks injunctive relief only. Then, if the JustAnswer does not remedy the CLRA violations within 30 days of notification, the plaintiff may amend her or his CLRA causes of action without leave of court to add claims for damages.

152. Pursuant to Cal. Civ. Code § 1782, since JustAnswer did not rectify its conduct within 30 days of the date of receipt of the letter, Plaintiff is able to amend the previous Complaint to add claims under the Cal. Civ. Code for actual damages without leave of Court.

153. In particular, JustAnswer failed to remedy their respective violations of the CLRA as to Plaintiff and the Class Members within the statutory period as Plaintiff sent a CLRA letter on October 23, 2025 outlining Defendant's wrongdoing and the remedy sought by Plaintiff, individually and on behalf of the class members. The letter was received by JustAnswer on October 29, 2025. JustAnswer failed to remedy their respective violations within 30 days of receiving the Certified Letter, Return Receipt Requested (i.e., on or before November 28, 2025). It is now December 8, 2025 – more than a week beyond the thirty-day statutory period.

154. Plaintiff has no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above.

155. In sending the letter and bringing this action, Plaintiff has engaged the services of attorneys and has incurred reasonable legal fees and expenses in an amount to be proved at trial.

156. Plaintiff is thus entitled to recover Plaintiff's attorneys' fees, costs, and expenses.

157. JustAnswer's practices, acts, and courses of conduct in connection with the sale of its answer service product, as described above, are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. As a result of JustAnswer's acts and practices as alleged in this Complaint, Plaintiff is entitled to injunctive relief prohibiting JustAnswer from continuing in the future the unlawful, unfair, or fraudulent practice as described herein.

158. Plaintiff reasonably believed and/or depended on the material false and/or misleading information provided by, or omitted by, JustAnswer with respect to JustAnswer's unfair acts and deceptive practices.

159. By reason of the foregoing, JustAnswer's unlawful methods, acts, or practices as described herein have caused damage to Plaintiff, entitling Plaintiff to damages and injunctive relief; Attorneys' fees and costs; and other relief that this Court deems proper.

160. Unless enjoined and restrained by this Court, JustAnswer will continue to commit the violations alleged herein. Pursuant to Civil Code § 1780(a)(2), on behalf of the Class and general public, Plaintiff also seeks an injunction prohibiting JustAnswer from continuing their unlawful practices as alleged herein.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**

**(Business and Professions Code section 17200, et seq.)**

**(On Behalf of Plaintiff and the Proposed Class)**

161. Plaintiff realleges and incorporates by reference paragraphs 1-106 as though fully set forth herein.

162. Business and Professions Code section 17200 provides:

> "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

Cal. Bus. & Prof. Code § 17200.

163. Pursuant to the unfairness prong of the UCL, JustAnswer has a duty not to engage in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising".

164. JustAnswer willfully and knowingly engaged in unlawful, unfair or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising by: (a) engaging in acts or practices that are unethical; (b) violating established public policy as recognized by the FTC and the Direct Marketing Association; (c) causing harm that outweighs these practices' utility.

165. JustAnswer's business practices violate the "unfair" prong of California Business & Professions Code §§ 17200, *et seq*.

166. JustAnswer's business practices are unfair business practice under the UCL because they either offend[] an established public policy or [are]immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

167. JustAnswer's business practices also violate the "unfair" prong of the UCL because it: (a) represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, quantities that they did not have; (b) represented that goods or services are of a particular standard, quality, or grade […] if they are

of another; (c) advertised goods or services with intent not to sell them as advertised; (d) represented that a transaction confers or involves rights, remedies, or obligations that it does not involve, or that are prohibited by law; (e) representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; and/or (f) inserting an unconscionable provision in a contract.

168. Additionally, JustAnswer's further violates the "unfair" and/or have violated the "unlawful" prong of the UCL by engaging in one or more of the following practices:

(a) Violating regulations promulgated by the FTC;

(b) Negligence Per Se;

(c) Negligence;

(d) Fraud;

(e) Fraud by Omission;

(f) Unjust Enrichment;

(g) violation of California and Texas law, and/or other statutes and/or common law;

(h) a violation of other common law claims.

(i) Violation of the applicable Texas Consumer Protection Act;

(j) Violation of the UCL;

(k) Violation of CLRA;

(l) Violation of the FAL;

(m) Knowingly and intentionally concealing from Plaintiff and the proposed Class material information;

(n) Engaging in conduct in which the gravity of the harm to the Plaintiff and the proposed Class outweighs the utility of the JustAnswer's conduct;

(o) Engaging in acts and/or practices and/or omissions that are immoral,

unethical, oppressive, or unscrupulous and causes injury to consumers which outweigh its benefits; and/or

169. Each and every separate act constitutes an unlawful and/or unfair business practice. Each day that JustAnswer engaged in each separate unlawful act, omission, or practice is a separate and distinct violation of Business and Professions Code 17200.

170. In addition, JustAnswer's practices violate the "fraudulent" prong of the UCL because JustAnswer's conduct was: (a) intended to cause injury to the Plaintiff; (b) carried on with a high degree of despicable and conscious disregard of the Plaintiff's rights; (c) a clear attempt to use the Plaintiff's need for something to be fixed to hook them into an autorenewal subscription and/or negative option situation; and (d) wrongfully committed by design in order to increase JustAnswer's own profit, while at the same time taking Plaintiff and the proposed class's money without informed consent.

171. Plaintiff has standing to pursue this cause of action as Plaintiff has suffered injury in fact and has lost money or property as a result of JustAnswers' actions as delineated herein.

172. As a direct and proximate result of JustAnswers' unfair, unlawful, unethical, deceptive, fraudulent, unreasonable, otherwise wrongful, and/or in bad faith business practices, Plaintiff and the proposed Class have suffered injury in fact and lost money or property.

173. In addition, JustAnswer's conduct violates the California Automatic Renewal Law (Bus. & Prof. Code, § 17600 *et seq*. (ARL) and under the unlawful prong of the UCL a violation of another law is treated as unfair competition and is independently actionable.

174. JustAnswer imposed charges without complying with all applicable

requirements of the ARL including without limitation the lack of clear and conspicuous disclosure of certain terms and conditions and affirmative consent by the Plaintiff and the proposed Class or other provisions of the ARL.

175. JustAnswer's acts, omissions, nondisclosures, misleading statements as alleged herein were and are false, misleading, and/or are likely to deceive the general public and thus constitute fraudulent business practices in violation of the UCL. These acts, omissions, nondisclosures, and misleading statements were contrary to the provisions of the False Advertising Law, Bus. & Prof. Code, § 17500 and constitute violations of the UCL

176. The basis for Plaintiff's respective claims emanated from California as one or more decisions regarding JustAnswer's policies and practices occurred at its California headquarters.

177. As demonstrated by its acts herein, JustAnswer had and has no intention of honoring its conspicuous promises. As such, JustAnswer has violated Business and Professions Code sections 17200, *et seq*., and has engaged in unfair, unlawful, unethical, deceptive, fraudulent, unreasonable, otherwise wrongful, and/or in bad faith business act or practice and/or unfair, deceptive, untrue, or misleading advertising.

178. Further, the Plaintiff was and is a party aggrieved and who has suffered injury as a result of JustAnswer's unfair, deceptive, untrue, and/or misleading advertising. Plaintiff has sustained damages as alleged herein.

179. Pursuant to *Kraus v. Trinity Mgr. Services, Inc.* (2000) 23 Cal.4th 116, 138, restitution of Plaintiff's automatic renewal and/or negative option fees are compelled.

180. Further, Plaintiff is not required to exhaust all other remedies prior to pursuing the remedies afforded by Business and Professions Code section 17200.

Pursuant to Business and Professions Code section 17205, these statutory remedies are cumulative to all other laws of this state.

181. Plaintiff is informed and believe and, on that basis, allege that the unfair, unlawful, unethical, deceptive, fraudulent, unreasonable, otherwise wrongful, and/or in bad faith practices alleged above are continuing in nature and are widespread practices engaged in by JustAnswers.

182. The conduct of JustAnswers, as set forth above, constituted unfair, unlawful, unethical, deceptive, fraudulent, unreasonable, otherwise wrongful, and/or in bad faith business practices as defined by the above-referenced statutes.

183. Plaintiff prosecutes this action on Plaintiff's own respective behalf, on behalf of the general public, and on behalf of others similarly situated.

184. Plaintiff is entitled to an injunction preventing JustAnswer from engaging in the widespread conduct alleged herein, to restitution, and for an award of attorney's fees upon prevailing in this request for relief.

185. Plaintiff and members of the proposed Class paid what they believed to be a one-time fee to obtain help regarding a problem from JustAnswer LLC but were continued to be billed $46.00 or similar amount a month in perpetuity and are thereby entitled to have restored to them the sums of money that exceeded the original fee. Additionally, Plaintiff and members of the proposed Class paid for what JustAnswer represented was answers from an expert. JustAnswer further represented "Experts are ready to answer your General questions on JustAnswer. Each Expert on JustAnswer has passed a rigorous application and credential-verification process. " However, in the fine print, JustAnswer stated that JustAnswer did not vet or verify the person answering questions and instead defining an expert as "the person who answers a question on the Site" and further representing "Use of the term 'Expert' by JustAnswer and on the Site is only meant to describe Users who answer questions

on the Site, and not to guarantee any particular level of expertise of these Experts."

**SIXTH CAUSE OF ACTION**

**CONVERSION**

**(On Behalf of Plaintiff and the Proposed Class)**

186. Plaintiff realleges and incorporates by reference paragraphs 1-106 as though fully set forth herein.

187. JustAnswer has enrolled Plaintiff and the proposed Class in automatic renewal programs and/or continuous service programs without their informed consent and: (a) failed to present the automatic renewal or continuous service offer in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer; (b) charging the consumer's credit or debit card or the consumer's third-party payment account for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of the automatic renewal offer terms or continue service offer terms; and (c) failed to provide an acknowledgment that includes the required clear and conspicuous disclosure of automatic renewal or continuous service offer terms, cancellation policy, information regarding how to cancel, and a toll-free telephone number, electronic mail address, postal address or other mechanism for cancellation.

188. Additionally, JustAnswer engaged in the unfair and deceptive act or practice of (a) misrepresenting material facts in selling any good or service with a negative-option feature; (b) failing to disclose material facts prior to obtaining consumer's billing information and charging customers; (c) failing to obtain unambiguous affirmative consent to the negative option feature prior to charging Plaintiff and the proposed Class for it; and (d) failing to provide Plaintiff and the

proposed Class with simple cancellation mechanisms to immediately halt all recurring charges.

189. Plaintiff and the proposed Class suffered injury-in-fact and lost money as a result of JustAnswer's unlawful failure to obtain authorization to charge a monthly fee for its automatic renewal and/or negative option membership.

190. JustAnswer's collection and retention of money resulted in the wrongful exercise of dominion over property belonging to Plaintiff and the proposed Class.

191. Plaintiff and the proposed Class are entitled to restitution of all amounts that JustAnswer charged to their respective credit cards, debit card, or third-party payment accounts.

## SEVENTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

## (On Behalf of Plaintiff and the Proposed Class)

192. Plaintiff realleges and incorporates by reference paragraphs 1-106 as though fully set forth herein.

193. JustAnswer's practice of: (a) misrepresenting material facts in selling any good or service with a negative-option feature; (b) failing to disclose material facts prior to obtaining consumer's billing information and charging customers; (c) failing to obtain unambiguous affirmative consent to the negative option feature prior to charging Plaintiff and the proposed Class for it; and/or (d) failing to provide Plaintiff and the proposed Class with simple cancellation mechanisms to immediately halt all recurring charges are material facts that influenced the decision of Plaintiff and the proposed Class to provide payment card information and ask a question on JustAnswer.

194. JustAnswer's practice of failing to adequately advise consumers that

they would enter into automatic renewals, failure to provide the acknowledgement required by the Automatic Renewal Laws, and/or failure to provide an easy way to stop your card being charged are material facts that influenced the decision of Plaintiff and the proposed Class to provide payment card information and ask a question on JustAnswer.

195. JustAnswer enrolled Plaintiff and the proposed Class in automatic renewal programs and/or continuous service programs and/or negative option programs without their informed consent and: (a) failed to present the automatic renewal or continuous service offer in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer; (b) charging the consumer's credit or debit card or the consumer's third-party payment account for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of the automatic renewal offer terms or continue service offer terms; and (c) failed to provide an acknowledgment that includes the required clear and conspicuous disclosure of automatic renewal or continuous service offer terms, cancellation policy, information regarding how to cancel, and a toll-free telephone number, electronic mail address, postal address or other mechanism for cancellation.

196. Additionally, JustAnswer misrepresented material facts in selling any good or service with a negative-option feature; (b) failed to disclose material facts prior to obtaining consumer's billing information and charging customers; (c) failed to obtain unambiguous affirmative consent to the negative option feature prior to charging Plaintiff and the proposed Class for it; and (d) failed to provide Plaintiff and the proposed Class with simple cancellation mechanisms to immediately halt all

recurring charges.

197. At the time JustAnswer made the material misrepresentations and/or omissions, JustAnswer knew or should have known that the misrepresentations were false, or JustAnswer made the misrepresentations without knowledge of their truth or veracity.

198. Plaintiff and the proposed Class reasonably, justifiably, and detrimentally relied on the misrepresentations and, as a proximate result thereof, suffered damages and could suffer additional damages in the future.

## EIGHTH CAUSE OF ACTION

## UNJUST ENRICHMENT

**(On Behalf of Plaintiff and the Proposed Class)**

199. Plaintiff realleges and incorporates by reference paragraphs 1-106 as though fully set forth herein.

200. Plaintiff, individually and on behalf of the proposed Class, assert a common law claim for unjust enrichment.

201. By means of its pattern of wrongful conduct, JustAnswer knowingly assessed fees upon Plaintiff and the proposed Class that are unfair, unconscionable, and oppressive.

202. JustAnswer knowingly received and retained wrongful benefits and funds from Plaintiff and the proposed Class. In so doing, JustAnswer acted with conscious disregard for the rights of Plaintiff and the proposed Class.

203. As a result of JustAnswer's wrongful conduct as alleged herein, JustAnswer has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the proposed Class.

204. JustAnswer's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

205. Under the common law doctrine of unjust enrichment, it is inequitable for JustAnswer to retain the benefits it received, and is still receiving, without justification from the imposition of the automatic renewal fees.

206. The financial benefits derived by JustAnswer rightfully belong to Plaintiff and the Proposed Class. JustAnswer should be compelled to disgorge to a common fund for the benefit of Plaintiff and the proposed Class all wrongful or inequitable proceeds collected by JustAnswer. Aconstructive trust should be imposed upon all wrongful or inequitable sums received by JustAnswer traceable to Plaintiff and the proposed Class.

207. Plaintiff and the proposed Class have no adequate remedy at law.

208. Plaintiff and the proposed Class seek disgorgement of all proceeds, profits, benefits, and other compensation obtained by JustAnswer from their improper and unlawful subscription charges, as well as all other appropriate relief permitted by law of unjust enrichment, including reasonable attorneys' fees and costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against JustAnswer as follows:

(a) Certifying the proposed Class defined above, appointing the Plaintiff as a Class representative, and designating undersigned attorneys as Class Counsel;

(b) Finding that JustAnswer committed the violations of law alleged herein;

(c) Determining that JustAnswer was unjustly enriched as a result of its pattern of wrongful conduct;

(d) Providing to each Class Member compensatory, statutory, treble, nominal, and/or punitive damages owed to them as a result of Defendants' violations of law;

(e) Granting all appropriate relief including injunctive relief on behalf of Plaintiff and the Class under the applicable state laws;

(f) Awarding interest, costs, reasonable attorneys' fees, costs, and expenses; and

(g) Granting all such other relief as the Court deems appropriate.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Respectfully Submitted,

DATED: December 11, 2025 By: /s/ Francis J. "Casey" Flynn, Jr.

Francis J. "Casey" Flynn, Jr. #304712
casey@lawofficeflynn.com
**LAW OFFICES OF FRANCIS J. FLYNN, JR.**
6057 Metropolitan Plz.
Los Angeles, CA 90036
Tele: 314-662-2836

Joseph Lyon, #351117
jlyon@thelyonfirm.com
**THE LYON FIRM**
2754 Erie Avenue
Cincinnati, Ohio 45208
Tele: 513-381-2333
Fax: 513-766-9011

*Attorneys for Plaintiff and the Proposed Class and Sub-Class*

**CERTIFICATE OF SERVICE**

I hereby certify that, on December11, 2025, I electronically filed the foregoing with the Clerk of the Court by using the e-filing system which will send notification of such filing to all attorneys of record.

/s/ Francis J. "Casey" Flynn, Jr.